**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| George Puaoi, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ASSERTIO THERAPEUTICS, INC., JAMES P. FOGARTY, ARTHUR J. HIGGINS, WILLIAM T. MCKEE, JAMES L. TYREE, KAREN A. DAWES, PETER D. STAPLE, HEATHER L. MASON, JAY GALEOTA, and DAVID WHEADON, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff George Puaoi ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Assertio Therapeutics, Inc. ("Assertio" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed issuance of shares of Assertio common stock for the proposed merger between Assertio and Zyla Life Sciences ("Zyla") (the "Proposed Transaction").

2. On March 16, 2020 Assertio and Zyla issued a joint press release announcing that

they had entered into a definitive merger agreement (the "Merger Agreement"). Under the terms of the Merger Agreement, Zyla stockholders will receive 2.5 shares of common stock of a newly-formed holding company for each share of Zyla common stock held, and the newly combined company will retain the Assertio name and stock listing.[1] Upon completion of the Proposed Transaction, Assertio stockholders are expected to own approximately 68% of the new company, while Zyla stockholders will own approximately 32%.

3. On April 20, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") in connection with the Proposed Transaction. The Proxy Statement, which recommends that Assertio stockholders vote in favor of the issuance of Assertio Holdings common stock in connection with the Proposed Transaction (the "Stock Issuance"),[2] omits or misrepresents material information concerning, among other things: (1) Assertio's and Zyla's financial projections; (2) the financial analyses performed by Assertio's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel"), in connection with its fairness opinion; (3) potential conflicts of interest involving Stifel; and (4) the sales process leading up to the Proposed Transaction.

4. Unless remedied, Assertio stockholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information.

---

[1] Zyla and Assertio will become wholly-owned subsidiaries of Assertio Holdings, Inc. ("Assertio Holdings"), with Assertio Holdings assuming Assertio's listing on the NASDAQ.

[2] The Proxy Statement states that the Merger Agreement contains "customary closing conditions, including . . . approval of the issuance of shares of Assertio Holdings Common Stock in the Merger by the Assertio stockholders." Further, according to the Proxy Statement, the Assertio stockholder vote is "required under the rules of Nasdaq because the aggregate number of shares of Assertio Holdings Common Stock to be issued to Zyla stockholders in the Merger will exceed 20% of the total number of shares of Assertio Holdings Common Stock issued and outstanding immediately prior to the completion of the Merger."

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages occurred in this District, a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the Company is incorporated in this District.

8.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.      Plaintiff is, and has been at all relevant times hereto, an owner of Assertio common stock.

10.     Defendant Assertio is a specialty pharmaceutical company that provides medicines in neurology, orphan, and specialty areas in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq market ("NASDAQ") under the ticker symbol, "ASRT."

11.     Defendant James P. Fogarty ("Fogarty") is the Chairman of the Board of the Company.

12. Defendant Arthur J. Higgins ("Higgins") is the President, Chief Executive Officer, and a director of the Company.

13. Defendant William T. McKee ("McKee") is a director of the Company.

14. Defendant James L. Tyree ("Tyree") is a director of the Company.

15. Defendant Karen A. Dawes ("Dawes") is a director of the Company.

16. Defendant Peter D. Staple ("Staple") is a director of the Company.

17. Defendant Heather L. Mason ("Mason") is a director of the Company.

18. Defendant Jay Galeota ("Galeota") is a director of the Company.

19. Defendant David Wheadon ("Wheadon") is a director of the Company.

20. Defendants Fogarty, Higgins, McKee, Tyree, Dawes, Staple, Mason, Galeota, and Wheadon are collectively referred to herein as the "Individual Defendants."

21. Defendants Assertio and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

22. Zyla is a commercial-stage life sciences company that focuses on the development and marketing of various treatments for patients and healthcare providers. Zyla is incorporated in Delaware with principal executive offices located in Wayne, Pennsylvania. Zyla's common stock trades on the OTCQX Bulletin Board under the ticker symbol, "ZCOR."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

23. On March 16, 2020, Assertio and Zyla announced that they had entered into a definitive merger agreement whereby Zyla stockholders would be entitled to receive 2.5 shares of common stock of a newly-formed holding company for each share of Zyla common stock held.

According to the press release, the newly combined company would retain the Assertio name and trade on the NASDAQ under the "ASRT" ticker symbol. The press release announcing the merger states, in pertinent part:

**Assertio Therapeutics Agrees to Merge with Zyla Life Sciences to Create Synergistic Portfolio of Neurology and Non-Opioid Pain Products**

March 16, 2020 18:45 ET | **Source:** Assertio Therapeutics, Inc.

**Combined Company Pro Forma 2019 Net Product Sales of Approximately $128 Million[1]**

**Expects to Capture Significant Operating and Product Portfolio Synergies Upwards of $40 Million, Accelerating Revenue Growth and Creating Shareholder Value**

**Arthur Higgins to Become the Non-Executive Chairman and Todd Smith to be Named President and CEO of Combined Company**

LAKE FOREST, Ill. and WAYNE, Penn., March 16, 2020 (GLOBE NEWSWIRE) -- Assertio Therapeutics, Inc. ("Assertio" or "the Company") (NASDAQ: ASRT) and Zyla Life Sciences ("Zyla") (OTCQX: ZCOR), today announced that they have entered into a definitive merger agreement (the "Agreement"). Under the terms of the Agreement, upon the effective time of the merger (the "Merger"), Zyla stockholders will be entitled to receive 2.5 shares of common stock of a newly-formed holding company for each share of Zyla common stock held and the newly combined company will retain the Assertio name and trade on Nasdaq under the ASRT ticker. The boards of directors of both companies have approved the Merger and the Agreement. The Merger is currently expected to close in the second quarter of 2020, subject to approval by Assertio stockholders and by Zyla stockholders and the satisfaction of other customary closing conditions.

The Merger will create a leading commercial pharmaceutical company with neurology, inflammation and pain products. The combined company will have a leading portfolio of branded non-steroidal anti-inflammatory drugs (NSAIDs) commonly used by neurologists, orthopedic surgeons, internists, women's health providers, podiatrists and pain care specialists. Together, management intends to build a best-in-class specialty pharmaceutical company focused on commercial execution. The new company will have the platform, profitability and financial strength to both grow its existing portfolio and acquire additional complementary assets.

"Today's announcement represents an exciting new chapter in the transformation of Assertio and the Merger presents the perfect opportunity for me to transition into

the role of non-executive chairman," said Arthur Higgins, president and chief executive officer (CEO) of Assertio. "With over 25 years of pharmaceutical, medical device and biotechnology experience and a proven track record of success, Todd Smith has the leadership and business skills necessary to take the new Assertio to the next level."

Following the closing of the Merger, the parties agreed that in addition to Mr. Higgins becoming non-executive chairman of the board of the new holding company, Mr. Smith, the current president, CEO and director of Zyla, will become president, CEO and director of the new holding company.

There will be nine directors on the board of directors of the new holding company, six coming from Assertio including Mr. Higgins and three from Zyla, including Mr. Smith and Timothy P. Walbert, chairman, president and CEO of Horizon Therapeutics and chairman of Zyla's board of directors, who will become the lead independent director of the board of the new holding company.

"We believe the merger of Zyla and Assertio will create a stronger company with a robust differentiated portfolio," said Mr. Smith. "The new holdings company's revenues, EBITDA margin and expected combined company net debt to EBITDA leverage of two times will be notable among the specialty pharmaceutical companies of our size. We believe this transaction positions the combined company to grow its existing businesses and further accelerate growth by adding differentiated products through acquisitions and partnerships."

**Anticipated Strategic and Financial Benefits of New Holding Company**

- Pro forma 2019 net product sales of approximately $128 million[1]
- Projected pro forma 2020:
    - Non-GAAP adjusted EBITDA margin of greater than 25 percent
    - Upwards of $40 million in cost synergies, in addition to Assertio's previously announced $15 million in acceleration of cost savings initiatives
- Complementary products expected to result in leading portfolio of NSAIDs
- Positioned to take advantage of trend toward non-opioid pain products
- Reduced Zyla debt and holding company is expected to have net debt to EBITDA leverage of two times
- Positions Company to add differentiated products through acquisitions and partnerships

**Financials**
In connection with the Merger, Zyla will repay its promissory note in full and the outstanding balance under its $20 million credit facility. The holding company will assume only the $95 million principal amount of Zyla's outstanding senior debt under amended terms that provide the combined company flexibility for future business development.

6

Stifel is acting as the exclusive financial advisor to Assertio and Gibson, Dunn & Crutcher LLP is acting as its legal counsel. MTS is acting as the exclusive financial advisor to Zyla and Dechert LLP is acting as its legal counsel.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

24. The Proxy Statement, which recommends that Assertio shareholders vote in favor of the Stock Issuance in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Assertio's and Zyla's financial projections; (2) the financial analyses performed by Assertio's financial advisor, Stifel, in connection with its fairness opinion; (3) potential conflicts of interest involving Stifel; and (4) the sales process leading up to the Proposed Transaction.

25. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Assertio's Reasons for the Merger and the Share Issuance; (iii) The Assertio Board's Recommendations; (iv) Opinion of Assertio's Financial Advisor; (v) Certain Unaudited Projections of Assertio; and (vi) Certain Unaudited Projections of Zyla.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the May 19, 2020 shareholder vote, Assertio shareholders will be forced to make a voting decision on the proposed Stock Issuance without full disclosure of all material information.

27. Among other reasons, as described more fully below, this information is material in light of the Board's acknowledgment that, following the consummation of the Proposed Transaction, "Assertio shareholders will have a smaller ongoing equity participation in the

combined company . . . than they have currently[.]"[3]

28.     In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Assertio's and Zyla's Financial Projections

29.     The Proxy Statement omits material information concerning Assertio's and Zyla's financial projections.

30.     The Proxy Statement provides that:

> Assertio's management had prepared base case projections regarding Assertio's future operations for the calendar years 2020 through 2024 (the "Assertio Base Case Projections"). In connection with the proposed merger, Assertio prepared two additional sets of projections: (i) the Zyla projections provided by Zyla management and adjusted by Assertio management (the "Assertio Management-Adjusted Zyla Projections"), and (ii) pro forma projections regarding Assertio and Zyla's combined future operations for the calendar years 2021 through 2024 based on the Assertio Base Case Projections and the Assertio Management-Adjusted Zyla Projections (the "Assertio Pro Forma Projections", together with the Assertio Base Case Projections, and the Assertio Management-Adjusted Zyla Projections, the "Assertio Management Projections").

31.     The Proxy Statement purports to provide "a selected summary of the Assertio Management Projections[.]"

32.     The Proxy Statement, however, fails to disclose the following concerning the Assertio Management Projections: (1) all line items used to calculate (i) EBIT and (ii) Gross Profit; and (2) a reconciliation of all non-GAAP to GAAP metrics.

33.     The Proxy Statement provides that:

> Zyla's management had prepared projections regarding Zyla's future operations for the calendar years 2020 through 2023 (the "Zyla Original Case Projections"). In

---

[3] According to the Proxy Statement, "because Assertio Holdings will be issuing new shares of Assertio Holdings Common Stock to Zyla stockholders in the Merger, each outstanding share of Assertio Holdings Common Stock immediately prior to the Merger will represent a smaller percentage of the aggregate number of shares of Assertio Holdings Common Stock issued and outstanding after the Merger." *See* Proxy Statement at 9.

connection with the proposed merger, Zyla Management, with the assistance of MTS, prepared four additional sets of projections: (i) the Zyla Original Case Projections extended through 2024 and assuming generic competition starting in 2022 (the "Zyla Base Case Projections"), (ii) the Zyla Original Case Projections extended through 2024 but assuming generic competition starting in 2024 (the "Zyla Optimistic Case Projections"), (iii) the Assertio projections provided by Assertio management and adjusted by Zyla management (the "Zyla Management-Adjusted Assertio Projections"), and (iv) pro forma projections regarding Zyla and Assertio's combined future operations for the calendar years 2020 through 2024 based on the Zyla Base Case Projections and the Zyla Management-Adjusted Assertio Projections (the "Zyla Pro Forma Projections", together with the Zyla Original Case Projections, the Zyla Optimistic Case Projections and the Zyla Management-Adjusted Assertio Projections, the "Zyla Management Projections").

34. The Proxy Statement purports to provide "a selected summary of the Zyla Management Projections[.]"

35. The Proxy Statement, however, fails to disclose the following concerning the Zyla Management Projections: (1) all line items used to calculate (i) Operating Income, (ii) Net Income, (iii) Gross Profit, (iv) EBIT, and (v) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

36. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd

9

out" more reliable GAAP information.[4]

37. The disclosure of the aforementioned projected financial information is material because it would provide Assertio shareholders with a basis to project the future financial performance of Assertio and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, Assertio's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the proposed Stock Issuance in connection with the Proposed Transaction.

38. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the aforementioned projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

39. The above-referenced omitted information, if disclosed, would significantly alter

---

[4] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 6, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

the total mix of information available to Assertio shareholders.

### 2. Material Omissions Concerning Stifel's Financial Analyses

40. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Stifel.

41. Stifel issued an opinion to the Board, dated March 16, 2020, that the aggregate number of shares of Assertio Holdings common stock to be issued by Assertio Holdings in the Proposed Transaction upon the conversion of outstanding shares of Zyla common stock to holders of Zyla common stock pursuant to the Merger Agreement was fair to Assertio, from a financial point of view.

42. The Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by Stifel in its "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*[.]"

43. The Proxy Statement fails to disclose the following concerning Stifel's "*Discounted Cash Flow Analysis*" of Assertio: (1) Assertio's projected unlevered free cash flow, including all underlying line items thereto;[5] (2) the terminal value of Assertio; (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of (28.0%) to (38.0%), and (ii) discount rates ranging from 14.0% to 16.0%; (4) the range of implied enterprise values for Assertio; and (5) Assertio's cash and equivalents and total debt.

---

[5] According to the Proxy Statement, "Stifel used the Assertio Projections to perform a discounted cash flow analysis of Assertio" and utilized "Assertio's projected unlevered free cash flow" in connection with that analysis, but the Proxy Statement fails to disclose Assertio's projected unlevered free cash flow that were utilized by Stifel in its analysis. *See* Proxy Statement at 121. Unlike the Zyla Management Projections (which contain Zyla's projected unlevered free cash flow), the Assertio Management Projections do not include Assertio's projected unlevered free cash flow. Assertio's projected unlevered free cash flow must be disclosed, particularly since they were relied upon by Stifel in performing its analyses and in rendering its fairness opinion.

44. The Proxy Statement fails to disclose the following concerning Stifel's "*Discounted Cash Flow Analysis*" of Zyla: (1) all line items used to calculate Zyla's projected unlevered free cash flow; (2) the terminal value of Zyla; (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of (5.0%) to (15.0%), and (ii) discount rates ranging from 16.0% to 18.0%; (4) the range of implied enterprise values for Zyla; and (5) Zyla's cash and equivalents and total debt.

45. The valuation methods, underlying assumptions, and key inputs used by Stifel in rendering its purported fairness opinion must be fairly disclosed to Assertio shareholders. The description of Stifel's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Assertio shareholders are unable to fully understand Stifel's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the proposed stock issuance in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Assertio shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Stifel

46. The Proxy Statement omits material information concerning potential conflicts of interest involving Stifel.

47. The Proxy Statement provides that "Stifel previously acted as financial advisor to Assertio in connection with the sale of certain assets of its NUCYNTA business to Collegium in February 2020, for which Stifel is entitled to receive or has received compensation."

48. The Proxy Statement, however, fails to disclose the amount of compensation Stifel is entitled to receive or has received for providing such services.

49.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on the Board's recommendation to vote for the proposed Stock Issuance in connection with the Proposed Transaction.

50.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Assertio shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

51.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

52.     The Proxy Statement provides that from March 2017 through February 2020, Assertio and its financial advisors screened and considered over 200 potential business development partners or opportunities and engaged in preliminary discussions with 64 companies. Zyla and "Company B" were the only two companies that Assertio engaged with concerning a strategic combination that "progressed beyond preliminary discussions."

53.     Despite the fact that Company B and Assertio's discussions progressed beyond the preliminary stages, the Proxy Statement is silent on the discussions between the representatives of Company B and Assertio, including the parties to such discussions/communications, when they occurred, the specific content discussed/communicated, and how and why those discussions ended. The Proxy Statement also fails to disclose the terms and values of any indications and proposals between Assertio and Company B during the sales process leading up to the Proposed Transaction.

54.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to Assertio shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

57. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

58. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

59. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

60. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

65. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with or consummating the Stock Issuance and any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants complete the Stock Issuance and/or the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

    C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

    D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 6, 2020

Of Counsel:

Zachary Halper
Daniel Sadeh
HALPER SADEH LLP
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com
Email: sadeh@halpersadeh.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Counsel for Plaintiff*